**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CECILIA OLENDER, ET AL.** | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  11-4098** |
| **NATIONAL CASUALTY COMPANY,** | : | |
| **ET AL.,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM AND ORDER**</u>

Tucker, J.                                                                                      August___, 2012

       This is a declaratory judgment action.  Plaintiffs, Cecilia Olender and Krzystof a/k/a Chris Olender[1] seeks a declaration that Defendant, National Casualty Company, is obligated to provide Mrs. Olender with $100,000 in underinsured motorist coverage ("UIM").  At issue is whether Plaintiff's husband, Chris Olender, effectively selected reduced UIM policy limits under the relevant policy in the amount of $35,000.   Presently before the Court are the Parties' Cross-Motions for Summary Judgment (Doc. 27, 28).  Upon careful consideration of the parties' submissions and exhibits thereto and for the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment  as to Plaintiff's bad faith claim only.  Plaintiff's Motion for Summary Judgment is therefore granted as to its remaining breach of contract claim.

## I.  FACTS AND PROCEDURAL HISTORY

       Chris Olender, d/b/a Chris Auto Center, purchased a commercial garage insurance policy, bearing policy number CG00030878.  The policy was issued by Defendant, National Casualty, and provided coverage from November 1, 2007 through November 1, 2008.

---

[1] Chris Olender died on July 22, 2011.

On May 22, 2008, Plaintiff, Cecilia Olender, was permissively driving an automobile owned by Chris Auto Center, when she was involved in a motor vehicle accident.  Ms. Olender sustained serious and permanent injuries.  The driver responsible for the accident maintained auto liability coverage through Progressive Casualty Insurance Company with a liability limit of $15,000.  Progressive tendered this amount to Plaintiff, however, her losses exceeded this amount.  On September 8, 2008 Plaintiffs submitted a claim for UIM benefits to Defendants.  Thereafter, a dispute arose between Plaintiffs and Defendant regarding the amount of UIM coverage available.  In the process of completing the UIM selection/rejection form[2], Mr. Olender

---

[2]  The Pennsylvania Underinsured Motorists Coverage Selection/Rejection form completed by Mr. Olender reads as follows:

**A.**      **Mandatory Offer of Underinsured Motorists Coverage**

Underinsured motorists coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an automobile accident.

Please indicate your choices by ***initialing and/or signing*** next to the appropriate item(s) where indicated below:

**1.**      **Selection of Underinsured Motorists Coverage**

(Initials)

_____      I select Underinsured Motorists Coverage at limits equal to the limits of my liability Coverage.

S/Chris Olender_____                                                    10/31/07_____
Applicant's First Named Insured's Signature                         Date

**2.**      **Rejection of Underinsured Motorists Coverage**

By Signing this waiver I am rejecting Underinsured Motorist Coverage under this policy, for myself and all relatives residing in my household.  Underinsured Motorists Coverage protects me and my relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for losses and damages.  I

selected two options.  He signed and dated option one, requesting UIM coverage at limits equal

knowingly and voluntarily reject this form.

_____                    _____
Signature of First Named Insured                              Date

[PAGE 2]

3.     **Rejection of Underinsured Motorists Coverage At Limits Equal to Liability Coverage Limits**

Please indicate by initialing below whether you select Underinsured Motorists Coverage at limits less than the Liability Coverage limits of your policy

(Initials)

_S/C.O.___          I reject Underinsured Motorists Coverage at limits equal to the limits of my liability Coverage and I select the following lower limits.

(Choose one):

| (Initials) | Split Limits | OR | (Initials) | Combined Single Limit |
|---|---|---|---|---|
| _____ | $15,000/30,000 | | _s/C.O._ | $  35,000 |
| _____ | 25,000/50,000 | | _____ | $  50,000 |
| _____ | 50,000/100,000 | | _____ | $ 100,000 |
| _____ | 100,00/300,00 | | _____ | $250,000 |
| _____ | 250,000/500,000 | | _____ | $300,000 |
| _____ | 500,000/1,000,000 | | _____ | $500,000 |
| _____ | $_____ | | _____ | $_____ |
| | (Other) | | | (Other) |

_S/Chris Olender_____          10-31-07_____
Applicant's First Named Insured's Signature          Date

-3-

to the liability limit of $100,000.  He also signed and initialed under option three, requesting coverage in the amount of $35,000.00.

In or about July 2009, Defendant issued a check to Ms. Olender in the amount of $35,000.00, based on their interpretation of the policy, accompanied by a general release discharging Defendant from any further liability resulting from the May 22, 2008 accident.  On July 21, 2009, Mrs. Olender returned the check, reasoning that a dispute remained as to the amount of UIM coverage.  On February 6, 2012, Plaintiffs wrote Defendants a letter demanding that Defendant tender the $35,000.00 undisputed amount without requiring Plaintiffs to sign the release.  On February 10, 2012, Defendant responded to Plaintiffs' demand, rejecting the request.

On May 31, 2011, Plaintiffs filed the instant Complaint for declaratory judgment against Defendant, in the Philadelphia County Court of Common Pleas, seeking a judgment that Ms. Olender was entitled to $100,000 of UIM coverage as an insured under the policy, and asserting claims against the Defendant for breach of contract and bad faith.  On June 23, 2011, Defendant removed the matter to this Court.  Subsequently, Defendant filed an Answer with Affirmative Defenses and Counterclaims, asking the Court to find that Plaintiff effectively reduced his UIM coverage to 35,000.[3]  The parties later filed cross-motions for summary judgment.

The motions are now ripe for the Court's review.

## II.      STANDARD OF REVIEW

The standard for summary judgment in an action for declaratory relief is the same as for any

---

[3] On August 11, 2011, the parties agreed to the dismissal of the Defendants Scottsdale Insurance Company, Scottsdale Insurance Group, Scottsdale Indemnity Company, Scottsdale Surplus Lines Insurance Company and Nationwide Insurance Company d/b/a Scottsdale Insurance Group from this matter.

other type of relief.   Pellegrino Food Products Co., Inc v. American Automobile Ins. Co., 655 F.Supp.2d 569, 574 (W.D.Pa., 2008) (citing Transguard Ins. Co. of America, Inc. v. Hinchey, 464 F.Supp.2d 425 (M.D.Pa.2006)).  Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  See also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex, 477 U.S. at 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).   If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at

-5-

249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the

court must construe the facts and inferences in the light most favorable to the non-movant.  See

Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140

(3d Cir. 2001).  The court must award summary judgment on all claims unless the non-movant

shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g.,

Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore

Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## IV.   DISCUSSION

Under Pennsylvania law, the task of interpreting an insurance contract is a question of law

properly performed by the court. Meyer v. Cuna Mut. Ins. Society, 648 F.3d 154, 161 (3d Cir. 2011)

(citing Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir.

2006). The principles governing the interpretation of an insurance contract are well settled. Bateman

v. Motorists Mut. Ins. Co., 527 Pa. 241, 590 A.2d 281 (1991); Standard Venetian Blind Co. V.

American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983).  The contract is read as a whole

and construed according to its plain meaning. Aetna Cas. & Sur. Co. v. Debruicker, 838 F.Supp. 215,

217 (E.D. Pa., 1993).  Where the contract is clear and unambiguous, the court must give effect to that

language. Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F.Supp. 1090, 1093 (E.D. Pa., 1994).

However, if the contract is susceptible to different constructions or more than one meaning, such

ambiguities must be construed in favor of the insured. Id.

The instant action is governed by Pennsylvania's Motor Vehicle Financial Responsibility

Law (MVRL), which sets forth the obligations of insurance companies with respect to UIM coverage

under Pennsylvania Law.   Section 1731 mandates that an insurance company cannot issue a motor

-6-

vehicle liability policy in the Commonwealth of Pennsylvania unless it provides uninsured/underinsured ("UM/UIM") coverage equal to the policy holder's bodily injury liability coverage. 75 Pa.C.S. § 1731. Section 1734, permits the named insured to reject or reduce the statutorily available UIM coverage limits by submitting such request in writing to the insurance company. Id. at § 1734. Finally, section 1791 provides for a presumption that the insured has been notified of available benefits and limits if the insured is given the specified "Important Notice" form. 75 Pa.C.S. § 1791.

### A.      Breach of Contract Claim

In their Motion for Summary Judgment, Plaintiffs contend that Mr. Olender did not effectively reduce his UIM policy limits because the plain language of the form as completed by Mr. Olender requests UIM coverage for both $100,000 and $35,000. Plaintiffs therefore submit that they are entitled to $100,000 in UIM coverage and that Defendant's denial of this demand constitutes a breach of the insurance contract. In opposition, Defendant contends that Mr. Olender's selection of reduced UIM limits was effective since he signed and initialed next to the option for UIM limits of $35,000.00.

Based on the record, the insured's policy does not include information pertaining to the available UIM coverage, thus the Court must look to the UIM Selection/Rejection form for interpretation of the contract. The Court agrees with Plaintiff that the selection/rejection form, taken as a whole, cannot be said to manifest a knowing and intentional desire to purchase reduced UIM coverage. Defendant is correct in arguing that an effective selection of reduced UIM benefits can be as "simple as the named insured initialing next to the amount of UIM coverage desired." Nevertheless, Defendant ignores the fact that Mr. Olender effectively selected

two different UIM limits.  Contrary to Defendant's argument, a reading of the plain language of the contract indicates that it was not necessary for Mr. Olender to both sign and initial "option one" for his selection to be valid.   The directions as stated on the selection/rejection form indicates that the insured may select his designation by either ***initialing and/or signing*** next to the appropriate item.  In accordance with such directions, Mr. Olender signed and dated under "option one" indicating that he wished to maintain UIM coverage equal to his bodily injury limits of $100,000.  On page two, however, Mr. Olender then initialed and signed option 3, which indicated that he may do so by ***initialing*** next to his desired amount of UIM coverage.  His selection indicates that he desired $35,000.00 of UIM coverage.  Because both designations are valid and made in accordance with the forms directions, there are two reasonable interpretations of the form- that Mr. Olender has $100,000 in UIM coverage and $35,000 in IM coverage. The law is clear that when a contract is subject to more than one meaning, such ambiguities must be construed in favor of the insured.

Furthermore, testimony of Defendant's underwriter, Sarah Creasy, indicates that Defendant was aware of the inconsistency and instead chose to interpret the contract on its own without first checking with Mr. Olender to ensure that he in fact wanted to reduce his UIM coverage.  As the drafters of the contract, Defendant had the burden of resolving this ambiguity with the insured. Because Defendant did not do so, the Court finds that Defendant failed to meet its burden of demonstrating that Mr. Olender made a valid written request for reduced UIM coverage.  Accordingly, Defendant is obligated to provide Ms. Olender with $100,000 in UIM coverage, the amount equal to Mr. Olender's bodily injury liability coverage in accordance with

section 1731.[4]

### B.     Bad Faith Claim

Plaintiff contends that Defendant's refusal to tender the undisputed UIM coverage of $35,000 unless it first obtained a release of the disputed portion of Plaintiff's UIM claim amounted to bad faith.[5]  To succeed in an action for bad faith, a plaintiff must "show by clear and convincing evidence that [the insurer] lacked a reasonable basis for denying benefits and that [the insurer] knew or recklessly disregarded its lack of a reasonable basis." Terletsky v. Prudential Property & Casualty Co., 649 a.2d 680, 688 (Pa. Super. 1994).  For the reasons discussed in more detail above, the Court finds that Defendant's position regarding the policy limit was in good faith and based on the designations of the selection/rejection form.  Accordingly, Plaintiff's claim for bad faith must fail.

---

[4] Plaintiffs further contend that because Defendant cannot produce a signed "Important Notice" or cite any general policy of sending out such notices in accordance with section 1734, there is no presumption that Mr. Olender knowingly, voluntarily, or intentionally reduced his UIM coverage.  The Court will not address this argument since it agrees with Defendant that an insurance company's failure to provide an "Important Notice" is not a basis on which to void or reform a reduction or waiver of coverage. See Foremost Insurance Company v. Lynch, 155 F. Supp. 2d 398 (E.D. Pa 2001)(holding that the MVFRL does not provide a remedy for an insurer's failure to provide an insured with an "Important Notice.")

[5] Pennsylvania's bad faith statute, 42 PA.C.S.A. § 837, provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)     Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2)     Award punitive damages against the insurer.
> (3)     Assess court costs and attorney fees against the insurer.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted as to their breach of contract claim only.  Defendant is therefore ordered to provide Plaintiff with UIM coverage in the amount of $100,000.00.  Plaintiffs' bad faith claim is denied, with summary judgment entered in favor of Defendant.